# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

CELLULAR TELEPHONE ASSIGNED CALL NUMBER 562-319-3182

Case No. 3:17 mj 209

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 / 846 | distribution of controlled substance / conspiracy to distribute controlled substance |

The application is based on these facts:

Attached Affidavit of David Foltzer

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Foltzer, Special Agent of the HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/10/2017

*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 562-319-3182 | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Foltzer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 562-319-3182, **(the "Target Cell Phone")**, whose service provider is **Cellco Partnership d/b/a Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road Bedminster, NJ 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a I am a Special Agent with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and I have been so employed since October 2008. As part of my daily duties as an HSI agent, I investigate violations of the federal criminal code and have received training in the investigation of drug trafficking crimes.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by the user **of the Target Telephone** and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

**PROBABLE CAUSE**

5. On May 9, 2017, Homeland Security Investigations ("HSI") Border Enforcement Security Task Force ("BEST") was conducting a border enforcement and narcotics operation in Dayton, OH. HSI Task Force Officers ("TFOs") discovered SANCHEZ staying in room #203, America's Best Value ("ABV") Inn, 7130 Miller Ln., Dayton, Ohio 45414. TFOs conducted Department of Homeland Security ("DHS") database queries on SANCHEZ and discovered SANCHEZ entered the U.S. from Mexico in a vehicle on April 23, 2017 via the Nogales, Arizona Port of Entry. TFOs observed a silver Ford Fusion bearing California registration 7RLB376 registered to Francisco Javier Soria, 814 E. Sacramento, California. The Ford Fusion was located in the parking lot of the ABV Inn.

6. At approximately 10:00 AM, TFO Jason Leslie observed a Hispanic male subsequently identified as SANCHEZ exit room #203, ABV Inn and enter the Ford Fusion. SANCHEZ drove to Goodwill, 6868 Miller Ln., Dayton, Ohio with TFOs following. After several minutes, SANCHEZ departed Goodwill and traveled south on Miller Ln. to Benchwood Rd. in Butler Township, Ohio.

7. At approximately 10:15 AM, the Butler Township Police Department conducted a traffic stop of SANCHEZ, who was operating the Ford Fusion, for a marked lanes violation near the Interstate 75 Northbound on-ramp from Benchwood Rd.

8. Ohio State Highway Patrol ("OSHP") was contacted for assistance. Trooper Wheeland arrived on scene to assist, and OSHP K-9 "Fox" was utilized. K9 Fox alerted and indicated to the odor of narcotics on the vehicle. A probable cause search revealed approximately $11,000 in US Currency bundled in $1000 increments and wrapped in rubber bands. Agents also discovered a California DMV document signifying the transfer of ownership of the Fusion from Francisco Javier Soria to SANCHEZ dated May 3, 2017. SANCHEZ was transported to the Butler Township Police Department for further questioning.

9. An HSI agent responded to the Butler Township Police Department to interview SANCHEZ. SANCHEZ indicated he had completed secondary school and Spanish was his native language. The HSI agent read to SANCHEZ his Miranda rights in the Spanish language while SANCHEZ read along. SANCHEZ indicated he was able to read in the Spanish language and said understood and was willing to waive his rights. SANCHEZ signed the DHS Miranda rights form indicating he was willing to speak with Agents without a lawyer present. Another HSI agent was contacted to assist with interpretation.

10. SANCHEZ indicated the money found in his vehicle was not his, and it belonged to "Humberto" from Los Angeles, CA. SANCHEZ claimed he was traveling to Philadelphia, Pennsylvania to spend time in the city. SANCHEZ later admitted he was given $11,000 as payment for a package of narcotics he had dropped off at a home in Dayton, Ohio on May 8, 2017. SANCHEZ stated he was supposed to be paid $44,000 for the narcotics he dropped off at the Dayton house, but was only given $11,000. SANCHEZ gave agents verbal consent to look

in his phone. With agents watching, SANCHEZ opened the Google Maps application, then opened "more from recent history" tab and showed agents the address of the Dayton home. SANCHEZ admitted there was a trap or "hidden compartment" in his vehicle that contained approximately six kilograms of what he thought was cocaine. SANCHEZ notated on a picture of a vehicle where he thought the trap was located. SANCHEZ said he was given the vehicle with narcotics in it from a subject named "Ban Ban" in California and was instructed to drive the narcotics to Dayton, Ohio and other places. SANCHEZ said he was to be paid $6,000 for transporting the narcotics from California.

11. SANCHEZ and the Ford Fusion were transported to the Dayton OSHP Post for further investigation. Upon arrival to the OSHP Post, SANCHEZ pointed out on the Ford Fusion where the trap was located. SANCHEZ pointed near the driver's side rear rocker panel just in front of the rear tire. Agents discovered an area with tool marks where SANCHEZ indicated the trap would be. Agents removed a plastic wheel well, a layer of body filler, unscrewed a square piece of sheet metal and peeled it back. After peeling back the sheet metal, Agents discovered a natural void filled with six bundles wrapped in tape and connected with a string. The total weight of the six bundles was approximately sixteen (16) pounds. Agents conducted a field test on an individual bundle weighing 2.2 pounds. The field test did not give a positive indication for a substance containing a detectable amount of cocaine but did test positive for a substance containing a detectable amount of heroin and fentanyl.

12. Agents continued interviewing SANCHEZ at the OSHP Post. SANCHEZ stated that he transported narcotics on two other occasions making a single trip to Las Vegas with five pounds of crystal methamphetamine and an unknown substance to Phoenix. SANCHEZ said that on May 8, 2017, he arrived at 2221 Rustic Rd., Dayton, OH at approximately 4:00 PM and

stayed there for three hours. SANCHEZ stated he believed a family with children lived at the residence but he did not go inside the house. SANCHEZ stated he stayed in the garage while the narcotics were removed from the Ford Fusion. SANCHEZ stated "Moreno" left on three occasions during the three hour period and eventually gave $11,000 to SANCHEZ as payment for the narcotics. SANCHEZ indicated he was willing to cooperate with law enforcement and conduct a controlled delivery of sham to Philadelphia, PA. SANCHEZ knows Ban Ban's real name is Francisco Javier Soria and Soria uses telephone number 562-319-3182. Soria is the registered owner of the Ford Fusion SANCHEZ was operating when he agents discovered the suspected heroin. SANCHEZ stated Soria sent SANCHEZ to Dayton, OH and Philadelphia, PA with the suspected heroin in the Ford Fusion.

13. Continuing on May 9, 2017, Agents travelled with SANCHEZ and the Ford Fusion to Philadelphia, PA to attempt a controlled delivery. While traveling with Agents, SANCHEZ received several text messages from telephone 562-319-3182 which SANCHEZ believed to be Soria's telephone number. Soria instructed SANCHEZ to contact him at 562-319-3182 when SANCHEZ was 30 minutes outside the city of Philadelphia. SANCHEZ also requested a "selfie" photo from SANCHEZ depicting SANCHEZ operating the Ford Fusion while traveling along the interstate.

14. Your Affiant knows that collecting location information on the Target Cell Phone for a 30 day period will assist investigators to locate and to identify the user of the **Target Telephone**, which is being used to commit federal narcotics offenses; the information requested will assist the FBI in identifying co-conspirators and additional cellular devices owned and operated by the targeted subjects.

5

15. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

**AUTHORIZATION REQUEST**

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizonto furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

21. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

David Foltzer
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on 10th day of May, 2017.

SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 562-319-3182 (the "Target Cell Phone"), whose wireless service provider is **Cellco Partnership d/b/a Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road Bedminster, NJ 07921.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Verizon including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).